NOT FOR PUBLICATION                                    (Docket No. 16)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____
                                                        :
EDWARD L. REID, JR.,                                    :
                                                        :
                        Plaintiff,                      :        Civil No. 10-6246 (RBK/JS)
                                                        :
            v.                                          :        **OPINION**
                                                        :
                                                        :
CNA INSURANCE COMPANY,                                  :
JOHN/JANE DOES (1-10), and ABC                          :
CORPORATIONS (1-10),                                    :
                                                        :
                        Defendants.                     :
_____ :

**KUGLER**, United States District Judge:

        This matter arises out of an underinsured motorist ("UIM") insurance dispute between

Edward L. Reid ("Plaintiff") and Transportation Insurance Company ("Defendant").  The

Superior Court of New Jersey has previously heard the facts underlying this dispute in CNA Ins.

Co. v. Reid, 2007 WL 4118913 (N.J. Super. App. Div. 2007).  Plaintiff now brings a bad faith

claim against Defendant, alleging that Defendant engaged in bad faith litigation to avoid or

postpone an ultimate finding of liability on the merits in Plaintiff's favor.  Presently before the

Court is the Defendant's motion for summary judgment on the grounds that this matter is res

judicata.  Defendant also moves to dismiss on the grounds that, in alleging negligent and

fraudulent misrepresentation, Plaintiff has failed to state a claim for which relief may be granted.

The Court grants Defendant's motion for summary judgment, holding that this matter is res judicata. Therefore, the Court declines to address Defendant's motion to dismiss Plaintiff's claims for negligent and fraudulent misrepresentation. Also, finding that Plaintiff has failed to bring forth evidence that other fictitious defendants may have been involved in the instant matter, the Court dismisses the other fictitious defendants from this case.

**BACKGROUND**

This case, currently before the court on diversity jurisdiction pursuant to 28 U.S.C. § 1332, arises out of a seven-year history of litigation between Plaintiff and Defendant. Plaintiff was previously employed by "Lawn Doctor" and was involved in a serious automobile accident caused by the negligence of Diane Eline ("Tortfeasor"). Pl. br. at 9. At the time of the accident, Plaintiff's employer was covered under a "Business Auto" insurance contract issued by Defendant. Id. at 9-10. On May 24, 2000, Plaintiff notified Defendant that Plaintiff had a potential UIM claim against Defendant. Id. Plaintiff also requested that Defendant allow Plaintiff to settle a claim against Tortfeasor with Tortfeasor's insurer $100,000 (the amount of Tortfeasor's insurance policy limits). Id. Defendant opted instead to pay Tortfeasor's insurance policy limit of $100,000 in exchange for an assignment of Plaintiff's subrogation rights. See id.

Defendant and Plaintiff were subsequently involved in litigation as to the scope of the subrogation agreement. Id. Following a hearing, the Superior Court of New Jersey adjudged that the subrogation agreement was limited to an assignment of Plaintiff's rights as to Tortfeasor and Tortfeasor's spouse only. Id. Since the subrogation agreement was adjudged to be so limited, Defendant and Plaintiff were subsequently involved in a long history of litigation from May 2000 until December 2008 regarding Defendant's UIM liability to Plaintiff. This history of litigation involved "a pattern of continuous, vexatious litigation" tactics that Plaintiff alleges

2

Defendant employed in bad faith to purposely delay Plaintiff's claim against Defendant.  See id. at 6-7.  In September 2008, Plaintiff ultimately succeeded in the UIM action against Defendant, securing a judgment "in the amount of $850,000, plus pre-judgment interest in the amount of $186,650.56, totaling $1,036,650.56."  Id. at 6.  Defendant paid the judgment in full in December 2008.  Id.

The following is a list of the "continuous, vexatious" litigation tactics that Plaintiff alleges Defendant employed in bad faith in order to deny Plaintiff his rightful relief:

1) Defendant filed a declaratory judgment action seeking to invoke its policy "step-down" clause, which would have lowered Defendant's policy limits to $100,000, the amount of Tortfeasor's policy.  The Superior Court denied Defendant's complaint, finding that the step-down clause was not applicable.  See id. at 10

2) Defendant filed an appeal with Superior Court of New Jersey, Appellate Division, which affirmed the Law Division opinion.  See id. at 10 (citing CNA v. Reid, Docket No. A-1816-02T5 (N.J. Super. Ct. App. Div. 2004)).

3) When Plaintiff filed an emergent application to compel UIM arbitration between Plaintiff and Defendant, Defendant initially consented to arbitration, which was scheduled to commence in April 2005.  However, after consenting to arbitration, Defendant filed a motion to vacate the Superior Court's arbitration order and demanded a trial in the Superior Court.  See Pl. br. at 11-12.

4) Following Defendant's request for an order vacating the arbitration order, Defendant withdrew its request and agreed to reschedule the UIM arbitration for October 2005.  See id. at 12.

5)  Defendant filed a motion to vacate the order scheduling the arbitration for October 2005 and to dismiss Plaintiff's application for UIM benefits, asserting that Plaitniff was disqualified from UIM benefits because Plaintiff failed to investigate the potential liability of potential contributory tortfeasors.  See id. at 12.  The court denied Defendant's motion, noting that Defendant would have ample opportunity in the arbitration process to present to the arbitrators the issue of any potential contributory tortfeasors.  See id. at 13.

6)  Defendant filed a motion for reconsideration of the Superior Court's order denying Defendant's motion to vacate the arbitration order.  The Superior Court denied Defendant's motion for reconsideration.  See id.

7)  Defendant appealed to the Superior Court, Appellate Division, the Law Division's orders denying Defendant's motion to vacate the arbitration order and Defendant's motion for reconsideration of the same order.  The Appellate Division affirmed both orders of the Law Division, thus compelling UIM arbitration and concluding that Defendant was equitably estopped from refusing arbitration.  See id. at 7, 13-14 (citing CNA v. Reid, 2007 WL 4118913 (N.J. Super. Ct. App. Div. 2007) (noting that the Appellate Division concluded that Defendant's conduct in the litigation of the UIM case constituted the kind of "obstructions that unreasonably delay the payment of benefits that UIM coverage was intended to provide")).

The UIM litigation between Plaintiff and Defendant took place over a period of seven years, concluding on September 3, 2008.  See id. at 10-14.  Plaintiff ultimately prevailed on all of his claims and was awarded an arbitration judgment in the amount of $1,036,650.56, which Defendant subsequently paid in full.  See id. at 14.

4

Plaintiff filed his Complaint against Defendant in this matter on December 2, 2010, alleging bad faith failure to negotiate a settlement, bad faith denial of UIM benefits to Plaintiff, and bad faith continuation of vexatious litigation.  Defendants filed a motion for summary judgment on May 27, 2011.  All parties have filed responsive briefs.

I.      **STANDARD**

Summary judgment is appropriate where the court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"[T]he party moving for summary judgment under Fed.R.Civ.P. 56(c) bears the burden of demonstrating the absence of any genuine issues of material fact."  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the moving party satisfies its burden, the nonmoving party must respond by "set[ting] out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  "If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."  Id.

II.  **DISCUSSION**

Defendant chiefly argues that the Plaintiff's claims are barred by the doctrine of res judicata because of the prior litigation in <u>CNA v. Reid</u>.  Def. br. at 1-2.  Plaintiff unsurprisingly counters that this suit is not precluded, arguing that Plaintiff was not aware of Plaintiff's potential cause of action for bad faith until Plaintiff received an arbitration award in September 2008.  Pl. br. at 19.  The Court agrees with Defendant that Plaintiff's bad faith claim is barred by res judicata because Plaintiff extensively litigated his UIM claim in the above described action and had numerous opportunities to realize that Plaintiff may have had a potential cause of action for bad faith.

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'  Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" <u>New Hampshire v. Maine</u>, 532 U.S. 742, 748 (2001). Issue preclusion, in contrast, bars "'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." <u>Id.</u> at 748-749; <u>see</u> <u>Taylor v. Sturgell</u> 128 S.Ct. 2161, 2171 (2008); <u>see also</u> <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980) ("Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action").[1]

---

[1] Even where no party to a case raises a res judicata defense, a district court may <u>sua</u> <u>sponte</u> dismiss a claim on res judicata grounds where "a court is on notice that it has previously decided the issue presented . . . . This result is fully consistent with the policies underlying res judicata: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste."  <u>Arizona v. California</u>, 530 U.S. 392, 412 (2000) (citation and internal quotation marks omitted).

Claim preclusion bars a subsequent suit where there has been "(1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies." Equal Employment Opportunity Comm'n v. United States Steel Corp., 921 F.2d 489, 493 (3d Cir. 1990); see Elkadrawy v. Vanguard Group, Inc., 584 F. 3d 169, 172 (3d Cir. 2009). These elements will be addressed in turn.

The Court first notes that the parties do not dispute–nor could they–whether there has been a final judgment on the merits involving the same claim. See Pl. br. at 19 (arguing res judicata does not apply to Plaintiff because Plaintiff's claim was inchoate and unripe until the arbitration award was entered in September 2008, but not because the judgment was not final on the merits and involving the same claim). The prior suit ended with an arbitration award, after which Plaintiff notes that the Superior Court entered a "final judgment" against the Defendant, and Defendant satisfied the judgment. Id. at 14. Plaintiff also does not contest that the prior suit involved the same exact factual predicate behind Plaintiffs' current claims. Id. at 15. Finally, there is no question that both parties in this case are identical to the prior litigation. All three elements of res judicata are therefore established.

Furthermore, both parties agree that New Jersey's Entire Controversy Doctrine ("ECD"), R. 4:30A of New Jersey Rules of Civil Procedure, applies to this case. Pursuant to the Full Faith and Credit Act, 28 U.S.C. § 1783, a federal court must give "the same preclusive effect to a state court judgment as another court of that State would give." The ECD precludes litigation of "all aspects of a controversy that *might* have been thus litigated and determined." Mori v. Hartz Mountain Development Corp., 472 A.2d 150, 155 (N.J. Super. Ct. App. Div. 1983). "The entire controversy doctrine requires the assertion of all claims arising from a single controversy in a single action at the risk of being precluded from asserting them in the future." In re Estate of

7

Gabrellian, 859 A.2d 700, 707 (N.J. Super. Ct. App. Div. 2004) (citing R. 4:30A; Prevratil v. Mohr, 678 A.2d 243, 248 (N.J. 1996) ("At a minimum, all parties to a suit should assert all affirmative claims . . . arising out of the underlying controversy."); Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 137 (3d Cir. 1999), cert. denied, 528 U.S. 878 (1999) ("[A] party cannot withhold part of a controversy for separate later litigation even when the withheld component is a separate and independently cognizable cause of action.").  The policy behind the ECD is to "encourage comprehensive and conclusive litigation determinations, to avoid fragmentation of litigation, and to promote party fairness and judicial economy and efficiency." R. 4:30A.

Despite Plaintiff's inability to contest that all three traditional elements of res judicata are met in the instant case, Plaintiff argues that courts do not apply the ECD if to do so would be unfair in the totality of the circumstances and would not promote any of the objectives of the ECD.  See K-Land v. Landis Sewerage, 800 A.2d 861, 868 (N.J. 2002) (citing Sylvia Pressler, Current N.J. Rules, comments 1 & 2 on R. 4:30A (2002)).  In particular, Plaintiff argues that the ECD should not apply because the matter was unknown or unripe until the date that the arbitration award was announced in September 2008.  Pl. br. at 19.  The issues before the Court then are fourfold: 1) whether Plaintiff was aware of a cause of action in New Jersey for bad faith failure to negotiate in UIM litigation, 2) whether Plaintiff's claim for bad faith would have been ripe in the prior CNA v. Reid UIM litigation; and 3) whether application of the ECD in the instant case would be unfair to Plaintiff; and 4) whether application of the ECD in the instant case would fail to promote the objectives of the ECD.

A.      **Plaintiff's Awareness of a Cause of Action in New Jersey for Bad Faith in UIM Litigation**

Plaintiff notes in his brief that "[t]he New Jersey Supreme Court has recognized and defined a cause of action for an insurance company's bad faith failure to pay a valid insurance claim." Id. at 16 (citing Pickett v. Lloyd's, 621 A.2d 445 (1993)).  Plaintiff further notes that this bad faith claim against insurers has been recognized by New Jersey courts in the context of UIM litigation.  Pl. br. at 16 (citing Miglicio v. HCM Claims Corp., 672 A.2d 266 (N.J. Super. Ct. 1995)).  In particular, Plaintiff notes that Miglicio held that an insurer could be liable for both compensatory and punitive damages if the insurer acted intentionally in delaying the payment of a UIM claim.  See Pl. br. at 16 (citing Miglicio, 672 A.2d at 274 (1995)).[1]  Therefore, the Court finds that at the time of the prior UIM litigation Plaintiff was aware, or should have been aware, of a cause of action in New Jersey for bad faith in UIM litigation.

Defendant primarily relies on Taddei v. State Farm Indem. Co., 2010 WL 183900 (N.J. Super. Ct. App. Div. 2010), for the proposition that an uninsured motorist claimant is precluded from bringing a claim for bad faith where the claimant had already litigated a claim for uninsured motorist benefits in an earlier proceeding.  See Def.'s br. at 16.  In Taddei, the Plaintiff was injured in a car accident and subsequently brought an uninsured motorist claim against his own insurance company.  Id. at *1.  Because the insurance company rejected a court-ordered arbitration hearing, the parties went to trial.  Id. at *2.  Only at trial did the claimant attempt to raise a bad faith claim against his insurer.  However, the court declined to hear the claimant's bad faith claim because the issue had "not been squarely presented to the [c]ourt."  Id.

---

[1] The Court notes that pursuant to New Jersey Court Rule 1:36-3, unpublished opinions are not binding authority, though they can constitute persuasive authority.  The fact that Taddei was an unpublished opinion therefore further weakens Plaintiff's argument that Taddei "redefined the rights with respect to . . . bad faith claim[s]" in New Jersey. Pl. br. at 22.  In contrast, Miglicio, which clearly stated a cause of action in New Jersey for bad faith in UIM litigation, was a published opinion.

The claimant ultimately received a jury verdict in his favor and against the insurer.  Id. at

*2.  However, the claimant subsequently filed a second complaint against the insurer alleging

bad faith in not settling claimant's uninsured motorist claim and forcing claimant to trial.  Id.

Since the claimant had not timely amended his pleadings to insert the bad faith claim in the first

litigation, the court found that the ECD barred the claimant's bad faith claim against his insurer

in the claimant's subsequent litigation.  Id. at *8.

The Court finds that Taddei squarely addresses the issue in the litigation presently before

the Court.  Because the facts and procedural history involved in Plaintiff's UIM claim are nearly

identical to those of Taddei, Taddei's analysis of the ECD must preclude Plaintiff from bringing

the instant claim for bad faith against Defendant.  However, Plaintiff argues that Taddei should

not apply in the present litigation because Taddei was published nearly one month after

Plaintiff's arbitration hearing had concluded in early June, 2008.  Pl. br. at 22.  Plaintiff argues

that because Taddei "redefined the rights of the parties with respect to the bad faith claim,"

Plaintiff should not be barred by law that "was not even in existence at the time [Plaintiff's] case

was arbitrated."  Id.  The Court disagrees, finding that a cause of action for bad faith in uninsured

motorist litigation existed in New Jersey prior to Taddei.  Because a cause of action for bad faith

existed at the time of Plaintiff's initial UIM litigation, Plaintiff should have raised a bad faith

claim during the initial litigation in order to preserve Plaintiff's rights.

B.     **The Ripeness of Plaintiff's Claim During the Course of the Prior Litigation**

Plaintiff argues that his bad faith claim cannot be barred by res judicata because his bad

faith claim was not ripe until the time of the arbitration award in September 2008.  Pl. br. at 25.

Specifically, Plaintiff argues that "the arbitration award . . . for the first time legally established

the bona fide[] . . . basis for Plaintiff's bad faith claim."  Id. at 26 (emphasis omitted).  The Court

10

finds that, contrary to Plaintiff's assertion, Plaintiff's bad faith claim had become ripe during the course of the prior UIM litigation.

Taddei distinguished between the ripening of first-party and third-party bad faith claims in insurance litigation.  In third-party insurance claims, where the insurer is not a party to the underlying litigation against the insured, the claim for bad faith ripens only after an excess verdict is established.  Taddei, supra, at *3.  On the other hand, Taddei established that for first-party claims in UIM litigation, where "the insurer is in the litigation from the outset, any claims of bad faith can be asserted in the same litigation".  Id.  Because the Court finds that the instant case is a UIM litigation in which the insurer was a party to the prior litigation, the Court holds that Plaintiff's claim for bad faith was ripe for litigation in the prior case that was litigated from 2001-2008.

### C.      Whether Application of the ECD Would Be Unfair to Plaintiff

Plaintiff nonetheless argues that the ECD should not be applied in cases where it would be unfair in the totality of the circumstances or would not promote any of the objectives of the ECD.  See K-Land v. Landis Sewerage, 800 A.2d 861, 868 (N.J. 2002).  In particular, Plaintiff argues that it would be unfair to apply the ECD to bar his bad faith claim because Plaintiff was not aware that the facts in the prior UIM litigation could have constituted a claim for bad faith negotiation.  Plaintiff argues that the first time he became aware that he could state a cause of action for bad faith was at the time of the arbitration award in September 2008.  The Court finds that application of the ECD would not be unfair to Plaintiff because Plaintiff should have been aware, and several allegations in Plaintiff's Complaint suggest that Plaintiff was in fact aware, that the facts in the prior UIM litigation could have constituted a claim for bad faith negotiation.

See discussion supra at 3-4 (discussing numerous instances throughout the course of the prior UIM litigation in which Plaintiff alleges Defendant prolonged the litigation in bad faith).

Plaintiff argues that only after "the arbitration award was rendered, in excess of $1,000,000 . . . [did] Plaintiff kn[o]w he had a liquidated claim, and that Defendants eight (8) years of vexatious litigation belied the magnitude of their liability on Plaintiff's *bona fide* UIM claim." Id. at 26. Plaintiff further notes that "it is extremely difficult to determine the exact point in the UIM litigation wherein the Superior Court would have found the Plaintiff's bad faith claim had ripened." Id. The Taddei Court stated that even if the full strength of a plaintiff's bad faith claim may not be known until a final verdict in the plaintiff's favor, if the facts that form the basis of the claim are known to a plaintiff, the ECD requires that such a claim be made in the same litigation. Taddei, supra, at *6 (where "the alleged facts surrounding the complaint in Taddei II, that [the insurer in Taddei] had a policy of denying valid UM claims and had wrongfully denied plaintiff's claims, were known to the plaintiff at the time of his filing a complaint in Taddei I," plaintiff's claim was barred by the ECD); see Miglicio, 672 A.2d at 271-272. The Taddei Court further noted that "[i]f not initially pled, but events occur during the pendency of the litigation . . . give rise to the plaintiff's belief that the carrier has acted in bad faith, a motion can be made to amend the pleadings, which would preserve the issue for plaintiff by either including it in the present litigation or reserving it for later litigation if the court so orders." Taddei, supra, at *3. Therefore, Plaintiff should have amended his complaint in the original UIM litigation once Plaintiff discovered that Defendant was acting in bad faith.

Plaintiff's Complaint in the instant litigation alleges several facts that Plaintiff claims could state a cause of action for bad faith. Specifically, Plaintiff alleges that "[t]he Appellate Division confirmed that *throughout the pendency of the subject action*, [Transportation] has

obstructed and unreasonably delayed the resolution of Mr. Reid's UIM claim" and that

"[Transportation] never made any offer of settlement prior to the rendering of the arbitration

award."  Compl., Count One, ¶ 24 (emphasis added).  Plaintiff further alleges that "[f]rom the

date of initial notification of the [UIM] Claim [in 2000] until the present, despite full opportunity

of [D]efendant, Defendant . . . has failed and/or refused to offer any settlement at all or negotiate

in any manner whatsoever."  Compl. Count Two, ¶ 8.  Furthermore, Plaintiff pled the following

two affirmative defenses in the prior UIM action:

> Fourth Affirmative Defense:
> By virtue of Plaintiff s failure to timely pay the UIM Benefits which Defendant
> Edward Reid is entitled, they have willfully breached their contract and
> obligations pursuant to the terms and conditions of Plaintiff's policy with Lawn
> Doctor, Inc., to Defendant Edward Reid's detriment and harm.
>
> Fifth Affirmative Defense:
> Defendant, Edward Reid, is entitled to all remedies available to him pursuant to
> N.l.S.A. 39:6A and N.J.S.A. 17:28-1.1, et seq. and applicable case law, including
> VIM Benefits, interest, counsel fees, and consequential damages due to Plaintiff's
> failure to timely pay to him those benefits to which he is entitled.

See Def.'s Ex. F, Fourth and Fifth Affirmative Defenses.  The allegations in Plaintiff's

Complaint, and the affirmative defenses raised by Plaintiff in the prior UIM litigation,

demonstrate that Plaintiff should have been, and could well have been, aware that

Defendant's actions in the prior UIM litigation could have constituted an action for bad

faith.

Plaintiff relies heavily on Fornarotto v. American WaterWorks Co., 144 F.3d 276 (3d Cir.

1998), for the proposition that the ECD does not have to be applied to bar a second claim merely

where both claims share the same common body of facts.  Pl. br. at 20-21.  However, Fornarotto

was a case involving two transactionally unrelated claims.  The plaintiff in Fornarotto was a

pedestrian who was injured during a union protest when an automobile driven by a fellow

employee struck him. Id. at 276.  Subsequently, the plaintiff filed a negligence suit against his

employer.  See id. at 277.  While the state court action was pending, the plaintiff's application

for disability benefits was denied and the plaintiff brought a separate action under the Employee

Retirement Income Security Act ("ERISA") seeking disability benefits for injuries resulting from

the car accident.  Id. at 278.  The Fornarotto Court refused to apply the ECD to bar Plaintiff's

ERISA claims because Plaintiff's claims in the prior negligence action did not turn on the "same

transaction or series of transactions."  See id. at 279.  The court found that the ECD should not

apply in Fornarotto because there was little redundancy between the two litigations, the plaintiff

could not have known about the cause of action under ERISA until after he initiated the

negligence action, and because any failure to consolidate plaintiff's ERISA cause of action with

his negligence action was due to the defendant's decision to remove the ERISA action to federal

court.  See id. at 283.

Fornarotto is inapplicable in the instant case.  First, Plaintiff's bad faith claims arise out

of the same underlying transaction, namely, the UIM insurance litigation.  Secondly, as

discussed above, Plaintiff should have known, and in fact may well have known, that the facts in

the underlying UIM litigation could have constituted a bad faith claim.  Finally, there would be

significant duplication of litigation if Plaintiff were allowed to proceed with his bad faith claim

in the instant case, especially where Defendant has not prevented the consolidation of Plaintiff's

claims, as was the case in Fornarotto.

D.    **Whether Application of the ECD in this Case Would Fail to Promote the
        Objectives of the ECD**

Finally, Plaintiff argues that application of the ECD in the instant case would fail to

satisfy the objectives of the ECD.  Pl. br. at 23.  To the contrary, the Court finds that application

14

of the ECD would promote the objectives of the ECD of "promot[ing] settlement and 'encourag[ing] comprehensive and conclusive litigation determinations.'" Taddei, supra, at *7-8. The Taddei Court explained that "[a]n insurer who has been put on notice of a bad faith claim has a considerable incentive to review its claims posture before the [UIM] claim proceeds to trial . . . and thereby avoid the risk that the plaintiff's bad faith claim will be strengthened by a verdict well in excess of the insurer's last offer." Id.

Furthermore, the Court notes that it is more efficient for a plaintiff to raise a bad faith claim in the same lawsuit in which it seeks to compel insurance benefits. As discussed above, a bad faith claim in UIM litigation becomes ripe during the original UIM litigation. Where the insurer is present in an underlying UIM litigation, UIM plaintiffs are not required to wait for an arbitration award or a trial verdict. Addressing the bad faith claim in the course of the original litigation conserves judicial resources and protects defendants from the specter of unending litigation. Therefore, the Court holds that to apply the ECD in the instant case is not unfair to Plaintiff.

### E.      John/Jane Does #1-10 and ABC Corporations #1-10

Plaintiffs have stated claims against John/Jane Does #1-10 and ABC Corporations #1-10. Under Federal Rule of Civil Procedure 21, "the court may at any time, on just terms, add or drop a party." A court may drop John Doe defendants under this rule. Adams v. City of Camden, 461 F. Supp. 2d 263, 271 (D.N.J. 2006). Because Plaintiffs have failed to identify any unknown defendants, and because amended pleadings were due by July 1, 2011 (Scheduling Order, Docket No. 15), the Court dismisses the John Doe defendants.

III.    **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED**.

Defendants John/Jane Does #1-10 and ABC Corporations #1-10 are **DISMISSED**.

Date: ___11/3/11_____          ____/s/ Robert B. Kugler_____

                                                    ROBERT B. KUGLER
                                      UNITED STATES DISTRICT JUDGE